IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:24-CR-7-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KEVIN TYRONE EURE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress with underlying request for conduct of hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) (DE 30). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued memorandum and recommendation ("M&R"), recommending denial of defendant's request for hearing and corresponding motion to suppress (DE 39). Plaintiff filed objections and the government responded. In this posture, the issues raised are ripe for ruling. For the following reasons, the court denies defendant's motion without any hearing.

**BACKGROUND**

A federal grand jury indicted Kevin Tyrone Eure ("defendant") February 23, 2024, on six counts: 1) conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; 2) two counts of distributing cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1); 3) distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); 4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and 5) possession of a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Defendant filed the instant motion to suppress evidence obtained through a search warrant executed August 30, 2024, alleging misstatements or omissions in the warrant application. A North Carolina superior court judge issued the warrant January 25, 2024, and it was executed the following day at defendant's residence, 299 E. Hanrahan Road, Grifton, North Carolina ("the residence"). By this motion to suppress, defendant argues that the affidavit underlying the search warrant contains material misstatements or omissions, specifically, misstating the dates of controlled buys, that undermine probable cause and entitle him to a hearing under Franks, where he seeks suppression of the resulting evidence forming the basis for several charges. The government responded in opposition, relying upon the search warrant and affidavit, and defendant replied.

The magistrate judge recommends denial of the motion on the basis that defendant failed to make the substantial preliminary showing required to challenge the affidavit's validity.

## STATEMENT OF FACTS

The relevant facts as set forth in the search warrant affidavit and M&R, as they relate to the instant motion, are summarized as follows. "On January 25, 2024, special agent S.T. Huston of the North Carolina State Bureau of Investigation applied for a warrant to search the residence for evidence related to drug and firearm offenses." (Warrant and Aff. (DE 32-1) at 1-3).[1] According to the affidavit, the Craven County Sheriff's Office ("CCSO") had been investigating a drug trafficking operation ("DTO") in the Vanceboro area for two years. (Id. at 5). Multiple surveillance operations, controlled purchases, and debriefs led investigators to identify defendant Kevin Tyrone Eure, a.k.a. "Boodro," as the DTO's leader. (Id.).

---

[1] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

Confidential sources of information ("SOIs") told investigators they had conducted drug transactions at the residence and had observed kilograms of narcotics and firearms inside. (Id. at 5-6). In January 2024, CCSO and the State Bureau of Investigation conducted multiple controlled purchases of cocaine from defendant using a CCSO confidential SOI. (Id.).

During the first controlled purchase, investigators observed a black Nissan Altima known to be driven by defendant at the residence. (Id.). Defendant then directed the SOI to meet him elsewhere, and investigators observed the Altima leaving the residence. (Id.). The SOI later entered the vehicle with defendant, observed large quantities of drugs, and noticed a Ruger pistol in the glovebox. (Id.).

Before a second controlled purchase, investigators maintained physical surveillance on the residence. (Id.). Defendant again arranged to meet the SOI nearby and was observed arriving at the location after a white Lincoln Town Car ("the Lincoln") had briefly stopped at the residence and then driven to Dawson Road. (Id.). Defendant arrived shortly afterward, entered the SOI's vehicle, and exchanged narcotics for cash. Investigators maintained visual surveillance throughout the transaction and saw the Lincoln leaving Dawson Road shortly after the transaction. (Id.).

## DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). It does not conduct a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."[2] Orpiano v. Johnson, 687 F.2d 44,

---

[2] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

47 (4th Cir. 1982). Absent a specific and timely objection, the court reviews only for "clear error," and need not explain its reasoning for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Analysis

Defendant objects to the magistrate judge's determination that he is not entitled to a Franks hearing.[3] In Franks, the Supreme Court outlined the circumstances in which a defendant may challenge a facially valid search warrant. 438 U.S. 154. To obtain a Franks hearing, a defendant must "[first make] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. at 155-56. Second, defendant must demonstrate that "the allegedly false statement [was] necessary to the [] probable cause" determination. Id. The affidavit is presumed valid. Id. at 171.

Defendant's showing "must be more than conclusory" and include "allegations of deliberate falsehood or of reckless disregard for the truth . . . supported by an offer of proof." Id. "Allegations of negligence or innocent mistake are insufficient[, and t]he burden of making the necessary showing is thus a heavy one." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

That burden increases when a defendant relies on an omission rather than a false statement. Id. A warrant affidavit "cannot be expected to include every piece of information gathered in the course of an investigation." Id. at 454-55. Indeed, "the very process of selecting facts for demonstration of probable cause must also be a deliberate process of omitting pieces of

---

[3]     For those additional parts of the analysis in the M&R not subject of specific objection, finding no clear error, the court adopts the magistrate judge's recommendation on the issues raised in the motion to suppress.

4

information." Id. at 455. Thus, "intentional omissions do not satisfy the requirement of Franks." Id.

Rather, "to obtain a Franks hearing, [] defendant must show that the omissions were designed to mislead, or made in reckless disregard of whether they would mislead." United States v. Clenney, 631 F.3d 658, 664 (4th Cir. 2011). The omissions must also be material, such that their inclusion would defeat probable cause." Id.

Here, defendant argues he is entitled to a Franks hearing based on two contensions: 1) the affiant intentionally misstated the date of a controlled purchase to obscure the staleness of a December 2023 transaction, and 2) the affidavit omits material details regarding the Lincoln observed during the January 2024 purchase. (Mot. Supp. (DE 30) at 8–9, 11-12). Each is addressed in turn.

1. Controlled Purchase Date

Defendant first argues the affidavit misstates the timing of a controlled buy, referencing purchases in January 2024 when one actually occurred December 7, 2023. (Mot. Supp. (DE 30) at 8–9). He claims that the date was intentionally misstated to conceal the transaction's staleness (id. at 9), while the government concedes the error but attributes it to a drafting oversight (Gov't Opp. (DE 32) at 8). Defendant further objects that his evidence, including incident reports and surveillance notes, satisfies the "offer of proof" requirement under Franks. (Obj. (DE 42) at 2).

However, defendant provides no affidavits, testimony, or other evidence suggesting the misstatement was deliberate or reckless. Franks, 438 U.S. at 171; Tate, 524 F.3d at 455. To overcome the "presumption of validity" a defendant must allege a "deliberate falsehood" or "reckless disregard for the truth," supported by an "offer of proof." Tate, 524 F.3d at 454 (quoting Franks, 438 U.S. at 171). Defendant must not only identify the challenged portion of the affidavit

5

and explain why it is false but must also supply "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. Id.

Here, defendant argues the December date was omitted but he fails to present evidence of intent to mislead, and thus fails to meet the high bar required for a Franks hearing. While defendant points to incident reports and surveillance notes (Obj. (DE 42) at 2), these fail to demonstrate the affiant knowingly or recklessly included falsehoods to mislead the issuing judge. Under Franks, errors or inconsistencies alone do not suffice; there must be evidence of intent to deceive, which defendant fails to provide. Franks, 438 U.S. at 171. Evidence showing possible error or inconsistency, without more, does not meet the high burden of proving deliberate falsehood or reckless disregard for the truth.

2. The Lincoln

Defendant next contends that the affidavit omits material facts about the Lincoln observed near one of the January 2024 controlled purchases, misrepresenting its role in an effort to bolster probable cause. (Mot. Supp. (DE 30) at 11–12). According to defendant, discovery materials, namely surveillance reports from law enforcement, reflect that the Lincoln did not return to the residence after the transaction and that no one was seen exiting or entering the Lincoln in connection with the residence. (Id.). Defendant further argues that the affidavit falsely or recklessly asserts that the Lincoln was driven by a Black male, though no surveillance notes or reports substantiate this claim. (Id.). He asserts that these details were either omitted or included falsely to create an illusory connection between the Lincoln and the residence. (Id. at 12).

However, in addition to allegations about the Lincoln, the affidavit reflects that defendant personally conducted controlled purchases, as observed by law enforcement. (Warrant and Aff. (DE 32-1) at 5–6). In particular, the affidavit states:

6

> In January 2024, the NCSBI and CCSO conducted multiple controlled purchase of an amount of Cocaine from Eure utilizing a CCSO confidential SOI.
>
> For the first controlled purchase . . . [i]nvestigators observed Eure in the driver's seat of the Altima. When the SOI saw Eure parked on the side of the road, the SOI followed Eure to Dawson Road which is located across the street from 299 E Hanrahan Road.
>
> The SOI got in the vehicle Eure was driving to conduct the controlled purchase. Eure provided with the agreed upon amount of crack Cocaine and powder Cocaine. The SOI observed a big zip lock bag containing smaller plastic bags containing approximately an ounce and a half of powder Cocaine. The SOI also observed a bag containing approximately 200 Percocet. There was a Ruger pistol in the glovebox of the Altima.
>
> [On] the second controlled purchase . . . the SOI observed a black male wearing sunglasses, a Covid mask, and a hoodie walking towards them. When the black male got closer, the SOI realized it was Eure. Eure got in the passenger seat of the vehicle the SOI was operating and handed the SOI a large plastic baggie containing two smaller plastic baggies containing a white in color powdery substance. Once the SOI gave Eure the CCSO special funds for the controlled purchase, Eure exited the vehicle and walked back in the direction he came from.

(Warrant and Aff. (DE 32-1) at 6).

Regardless of any omissions concerning the Lincoln, the affidavit establishes ample, corroborated evidence linking defendant both to the controlled purchase and the residence, thereby supporting probable cause. (See id. at 5–6). The affidavit details surveillance of defendant exiting the residence immediately before controlled purchases, along with corroborated SOI reports describing drug transactions at the property, facts that directly connect the residence to defendant's ongoing drug trafficking. (Id.). Courts may draw reasonable inferences in evaluating probable cause. United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). Defendant has not shown that the alleged omissions regarding the Lincoln were either intentional or material, as required under Franks, and thus fails to meet the high burden for a hearing. Tate, 524 F.3d at 454; Chandia

7

v. United States, 514 F.3d 365, 373 (4th Cir. 2008) (denying Franks hearing absent supporting evidence).

3. Probable Cause

Even if the affidavit was corrected as defendant urges, it still supports probable cause. (Warrant and Aff. (DE 32-1) at 4-7); Franks, 438 U.S. at 171–72; United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011) (holding that false statements in an affidavit, even if made deliberately or with reckless disregard, must be material such that their removal eliminates probable cause for the warrant). It details confidential source reports tying the property to drug trafficking and firearm storage; defendant's direct role in drug sales, including January 2024 controlled purchases; and surveillance corroborating drug activity at the property. (Id. at 5-6). These facts establish a clear nexus between the property and defendant's ongoing drug activity, sufficient to support the warrant. See United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005).

Defendant's argument that the December 7, 2023, transaction was too remote is unpersuasive. Courts recognize drug trafficking as an ongoing enterprise, not subject to traditional staleness rules. See Richardson, 607 F.3d at 370. Irrespective of the December transaction, the January 2024 controlled purchase, corroborated by contemporaneous surveillance and SOI reports, independently supports probable cause. (Warrant and Aff. (DE 32-1) at 4-7).

Defendant's reliance on United States v. Bryant, No. 4:19-CR-00085- FL-1 (E.D.N.C. Apr. 8, 2021) is similarly unpersuasive. (Reply (DE 36 at 4). In Bryant, the defendant argued that the search warrant affidavit improperly relied on uncorroborated historical information and failed to establish probable cause. See Bryant, 2021 WL 3140469, at *5-6 (noting defendant's objection to language in the affidavit that he was a "known drug dealer" and that the Sheriff's Office had received information about his drug sales over several months). However, the court in Bryant

ultimately denied the defendant's motion to suppress, thereby rejecting the argument that reliance on such information rendered the affidavit invalid. Id. at 9. This undermines defendant's use of Bryant to support his position.

Moreover, Bryant is distinguishable from the instant case. In Bryant, the court explicitly noted that the historical information was included only to "set the stage" for corroborative evidence, which established probable cause. Id. at 6. Unlike Bryant, where such background information was not central to the analysis, the affidavit here includes detailed, corroborated evidence of defendant's drug-related activities. (Warrant and Aff. (DE 32-1) at 5-6). This evidence includes contemporaneous surveillance, controlled purchases, and reports tying defendant to the residence. (Id.). Such corroboration establishes a substantial nexus between defendant's ongoing drug trafficking and the property at issue, rendering Bryant inapposite.

In sum, defendant provides no evidence undermining the affidavit's validity. Even with the proposed corrections, the affidavit establishes probable cause, and defendant has not made the substantial preliminary showing Franks requires. Therefore, the magistrate judge properly determined that defendant's request for a Franks hearing must be denied.

## CONCLUSION

Based upon the foregoing, upon de novo review of the M&R, and after due consideration of the record, the court overrules defendant's objections and ADOPTS the M&R. Accordingly, no basis existing for conduct of a Franks hearing, that request is DENIED, and for reasons also given, defendant's corresponding motion to suppress (DE 30), is DENIED.

SO ORDERED, this the 30th day of April, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge