IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:24-CR-7-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| KEVIN TYRONE EURE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court January 27-29, 2026, for trial, at which the court denied defendant's motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, and in part declined to include defendant's proposed jury instructions regarding a buyer-seller relationship. The court sets forth in the instant memorandum opinion its reasons for those decisions.

## BACKGROUND

Indictment filed February 23, 2024, charged defendant with the following six counts:

1. Count One: Conspiracy to distribute and possess with the intent to distribute five hundred (500) grams or more of cocaine and a quantity of cocaine base (crack), between 2021 and January 26, 2024, in violation of 21 U.S.C. §§ 841(a)(l) and 846;
2. Count Two: Distribution of a quantity of cocaine and a quantity of cocaine base (crack) on December 7, 2023, in violation of 21 U.S.C. § 841(a)(1);
3. Count Three: Distribution of a quantity of cocaine on January 23, 2024, in violation of 21 U.S.C. § 841(a)(1);
4. Count Four: Possession with intent to distribute a quantity of cocaine and a quantity of cocaine base (crack) on January 26, 2024, in violation of 21 U.S.C. § 841(a)(1);
5. Count Five: Possession of a firearm in furtherance of a drug trafficking crime, on January 26, 2024, in violation of 18 U.S.C. § 924(c)(1)(A); and
6. Count Six: Felon in possession of a firearm, on January 26, 2024, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

At arraignment October 16, 2025, defendant entered guilty pleas to counts two and three. He

pleaded not guilty to the other counts.

Prior to trial, defendant filed a request for jury instructions containing, in pertinent part, the following suggested language:

> A conspiracy requires more than just a buyer-seller relationship between the defendant and another person. A buyer and seller of cocaine or cocaine base (crack) do not enter into a conspiracy to distribute cocaine or cocaine base (crack) or to possess those substances with the intent to distribute simply because the buyer resells the controlled substances to others, even if the seller knows that the buyer intends to resell the controlled substances. Instead, the government must prove that the seller and the buyer had the joint criminal objective of further distributing cocaine or cocaine base (crack) to others.
>
> In considering whether the evidence supports the existence of a conspiracy or the existence of only a buyer-seller relationship, you should consider all of the evidence, including the following factors:
>
> 1. whether the sales were made on credit or consignment;
> 2. the frequency of the sales;
> 3. the quantity of the sales;
> 4. the level of trust demonstrated between the buyer and the seller, including the use of coded language;
> 5. the length of time during which the sales were ongoing;
> 6. whether the transactions were standardized;
> 7. whether the buyer assisted the seller by looking for other customers;
> 8. whether the parties agreed to warn each other of potential threats from competitors or law enforcement; and
> 9. whether the buyer was free to shop elsewhere.
>
> This is merely a list of relevant factors to aid you in analyzing the evidence; the presence or absence of any single factor is not determinative.

(Def's Prop. Instructions (DE 66) at 4) (hereinafter the "buyer-seller relationship instruction").

At the close of the government's evidence, defendant orally moved for judgment of acquittal. Defendant also reiterated his request for the requested buyer-seller relationship instruction. The court denied defendant's motion and declined to include his requested instruction.

2

**COURT'S DISCUSSION**

A.      Rule 29 Motion

      1.      Standard of Review

"A defendant who challenges the sufficiency of the evidence faces a heavy burden." United States v. Small, 944 F.3d 490, 499 (4th Cir. 2019).[1] The court's role is "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the charge. United States v. Ziegler, 1 F.4th 219, 232 (4th Cir. 2021). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. "[T]his court must give full play to the jury to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." United States v. Dennis, 19 F.4th 656, 665 (4th Cir. 2021). The "court cannot make its own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government." United States v. Penniegraft, 641 F.3d 566, 572 (4th Cir. 2011).

      2.      Analysis

"To prove the charged conspiracy, the government [is] required to establish that "(1) an agreement to distribute and possess cocaine or cocaine base with intent to distribute existed between two or more persons; (2) [defendant] knew of the conspiracy; and (3) [defendant] knowingly and voluntarily became a part of the conspiracy." United States v. Henderson, 107 F.4th 287, 292–93 (4th Cir. 2024).

"[I]t is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the

---

[1] Internal quotation marks and citations are omitted from all case citations in this memorandum opinion unless otherwise specified.

accused' made after commission of a crime." Id. at 293. "Courts, therefore, require corroboration to prevent confessions to crimes never committed and convictions based upon untrue confessions alone." Id.

"[T]he government must introduce substantial independent evidence which would tend to establish the trustworthiness of the defendant's statement, but the corroborative evidence need not be sufficient, independent of the defendant's incriminatory statements, to establish the corpus delicti." Id. "Thus, it is sufficient if the corroboration supports—not establishes—the essential facts admitted, and the corroboration need only tend to establish—not establish—the trustworthiness of the confession." Id. (emphasis in original).

"[A]n agreement between a defendant and a government agent, who does not agree to commit another crime but is engaging the defendant only to establish evidence of a crime, does not provide evidence of a genuine agreement." United States v. Edmonds, 679 F.3d 169, 175 (4th Cir. 2012).[2] "But this does not mean that statements made or acts done by [a defendant] during the controlled transactions could not be used as evidence of a conspiracy between [the defendant] and [a confidential informant] before he was a government agent and between [the defendant] and others at any time." Id.

"[E]vidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011). Likewise, "evidence of a continuing buy-sell relationship when coupled with evidence of large quantities of drugs, or continuing relationships and repeated transactions, creates a reasonable inference of an agreement." Id. For example, "a consignment arrangement or the

---

[2] The court notes that part of the history of the Edmonds case involves certiorari granted, judgment vacated, but on other grounds impacting sentencing only. 568 U.S. 803 (2012).

'fronting' of drugs indicates conspiracy to engage in drug trafficking beyond the immediate distribution transaction." Edmonds, 679 F.3d at 174.

Here, the government has sufficiently corroborated defendant's incriminatory statements regarding his knowing participation in a conspiracy to distribute cocaine and cocaine base (crack), between 2021 and January 26, 2024. First, agent Reeves testified to corroborating defendant's statements about some of the individuals defendant listed as involved in the drug distribution conspiracy, as follows:[3]

> Q. Through your investigation in this case, have you looked into some of these individuals that he listed?
>
> A. Yes.
>
> Q. And based on your knowledge are some of them involved in narcotics?
> . . . .
>
> A. Yes, I've dealt with some of those or I've investigated some of those individuals named.
>
> Q. So were you able to corroborate the information he gave in that interview?
>
> A. Yes.[4]

Second, Reeves testified to additional points of corroboration, which further "tend to establish . . . the trustworthiness of the confession." Henderson, 107 F.4th at 293. For example:

> Q. When the defendant is talking about that was my bedroom. And that's where the A K was found. What would that lead you to believe?
>
> A. Yes, that leads me to believe that's . . . going to be the room where the rifles were found in the closet . . . .
>
> Q. So to reorient you with the house . . . you see on there BLVR <u>which is the defendant's bedroom that he's talking about</u>?

---

[3] Where an official transcript of the trial has not yet been prepared, the court relies upon its own internal rough notes of the trial testimony and video interview references as quoted herein, with the understanding that the spelling of names and some language may appear here differently than as shown in an official transcript, if any.

[4] The court sustained defendant's objection to testimony of Reeves "as it related . . . to his corroboration of Mel Laughton's involvement in illegal narcotics." The court therefore does not rely herein on Reeves's additional testimony as it relates to such corroboration specifically related to Laughton.

A. Yes.

Q. And then the washer dryer room is right net to it, correct?

A. Yes. . . .

Q. And are you aware of any AK rifles were found in that area [of the house]?

A. <u>Yes, the mini Draco was found in the washer dryer room area</u>.

Q. <u>So that would be consistent with the defendant's statement in that video</u>?

A. Yes.

Reeves also testified that the defendant was talking in his interview "about the crack cocaine that was found at his house," such that defendant Reeves was able to corroborate defendant's statements through drugs located at defendant's house. Likewise, Reeves testified as to the guns in defendant's house, and his awareness of what defendant was talking about in saying "he was trying to sell the guns." Further, Reeves testified: "as part of that work in talking to individuals following leads, conducting just kind of regular law enforcement activities did you become aware of the defendant? A. Yes."

Third, testimony by other agents and additional evidence in the record corroborates defendant's statements in his interview. For example, Sergeant Buck testified "The drug unit had investigated the defendant particularly for a number of years." He described the controlled purchases of cocaine and cocaine base from defendant on December 7, 2023, and January 23, 2024, both of which were during the period of the conspiracy described by defendant in his interview, and both of which involved the same drugs and methods involved in the conspiracy defendant described.[5] Agent Huston, who was one of the agents conducting the interview of

---

[5] The court does not rely upon either controlled purchases as themselves evidence of an agreement necessary to prove a conspiracy, but rather for "corroboration" that "<u>supports</u>--not establishes-- the essential facts admitted,"

6

defendant, testified that "a bag of crack cocaine . . . was found in his home," and "there were various digital scales that we found throughout his home," including those "located in the kitchen . . . where he would be selling crack cocaine out of." Agent Burlingame described a "bulletproof vest pulled up out of the trash can" in defendant's home. This all provided corroboration to Huston's testimony that he "interview[ed] the defendant in regards to crack cocaine . . . powder cocaine . . . [and] . . . he said he had been selling crack cocaine for approximately eight years," that Huston asked defendant "about the amounts that he was buying and selling," and that defendant "made a statement along the lines of I got too many guns in the house" and "cooked the crack cocaine himself."

Finally, the foregoing testimony coupled with other evidence, including trafficking-related materials at defendant's house, provides further "independent evidence that [defendant] was engaged in a large-scale drug trade, which supported the trustworthiness of his confessions." Henderson, 107 F.4th at 294. This evidence includes the following:

1. Seized drugs from controlled buys on December 7, 2023, and January 23, 2024;
2. Seized cocaine base (crack) from search of defendant's residence January 26, 2024;
3. Stipulations as to the controlled buys and the seized cocaine base (crack);
4. 10 digital scales seized in search of defendant's residence January 26, 2024;
5. Testimony about a "plastic bag with some type of . . . brown powder substance in the glove box" in defendant's vehicle upon his arrest January 26, 2024, at a gas station not far from his residence;
6. Testimony about defendant's statement in patrol car after arrest: "I got too many guns in the house. I'm going federal";
7. Proximity and accessibility of the AK type, semi-automatic firearm, in washer dryer room next to defendant's bedroom;
8. Volume of additional guns, including semi-automatic guns, and ammunition seized from defendant's residence;
9. Money and pills seized from kitchen, and vacuum seal bags in living room, described in testimony as "commonly used to store and package some type of drug or narcotic"; and

---

and that "tend[s] to establish--not establish" alone "the trustworthiness of the confession. Henderson, 107 F.4th at 293 (emphasis in original).

10. Close proximity of the firearms, ammunition, drugs, drug paraphernalia, and bulletproof vest, within defendant's residence, as well as the geographical proximity of the controlled buys to defendant's residence.

In sum, all the foregoing evidence constitutes "substantial independent evidence which would tend to establish the trustworthiness of the defendant's statement[s]" in post-arrest interview. Henderson, 107 F.4th at 293. Therefore, defendant's statements coupled with that independent corroborating evidence constitutes "substantial evidence, taking the view most favorable to the Government, to support" the charge of conspiracy. Ziegler, 1 F.4th at 232. Accordingly, the court denied defendant's motion for judgment of acquittal.

B. Proposed Jury Instruction

The court declined to give defendant's proposed buyer-seller relationship instruction because the court did not find it to be a correct statement of the law in this circuit. In particular, as a basis for his proposed instruction, defendant cites to United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011), for the proposition that the court in that case held that "proof of a simple buyer-seller relationship is insufficient to prove a drug distribution conspiracy." (Def's Prop. Instr. (DE 66) at 5). In stating the law in Hackley, however, the Fourth Circuit suggests that a much more nuanced consideration of the probative value of a buyer-seller relationship is required:

> In United States v. Townsend, the Seventh Circuit held that, in drug conspiracy conspiracy [sic] cases, "evidence of a buyer-seller relationship, standing alone, is insufficient to support a conspiracy conviction." 924 F.2d 1385, 1394 (7th Cir.1991). Two years later, in United States v. Mills, we interpreted that holding, saying, "evidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." 995 F.2d 480, 485 n. 1 (4th Cir.1993). Since then, we have held that evidence of a continuing buy-sell relationship when coupled with evidence of large quantities of drugs, or "continuing relationships and repeated transactions," creates a reasonable inference of an agreement. United States v. Reid, 523 F.3d 310, 317 (4th Cir.2008).

Hackley, 662 F.3d at 679 (emphasis added).[6]

Additional qualifications also are stated by the Fourth Circuit in United States v. Edmonds, 679 F.3d 169 (2012). In particular:

> [T]he amount of cocaine involved in the distribution transaction, if sufficiently great, may indicate that the parties have engaged in the distribution transaction with an implicit agreement of further redistribution. See United States v. Yearwood, 518 F.3d 220, 226 (4th Cir.2008). We have also concluded that the regularity of individual distribution transactions may indicate the existence of a conspiracy to traffic in cocaine generally and apart from any single transaction. See United States v. Reid, 523 F.3d 310, 317 (4th Cir.2008). Similarly, a transaction involving a consignment arrangement or the "fronting" of drugs indicates conspiracy to engage in drug trafficking beyond the immediate distribution transaction, as the consignment implies a credit agreement that looks to further transactions to secure income to complete the original transaction. See United States v. Hicks, 368 F.3d 801, 805 (7th Cir.2004). Indeed, any agreement made in addition to or beyond the bare buy-sell transaction may be taken to infer a joint enterprise between the parties beyond the simple distribution transaction and thereby support a finding of conspiracy.

Edmonds, 679 F.3d at 174 (first and second emphasis added; third emphasis in original). Because defendant's instruction does not include the further statements emphasized here, it is at best incomplete, and at worst misleading. The omissions of the emphasized text about continuing buy-sell relationships, and fronting, are particularly troubling in the instant case given evidence of repeated transactions and defendant's use of fronting in both purchases and sales of cocaine and cocaine base (crack).

The court also declined to give defendant's proposed buyer-seller relationship instruction because that proposed instruction does not reflect the evidence introduced by the government in this case. The court further observes that the foregoing statement of the law, if articulated in full, particularly as it applies to the facts and circumstances of the instant case, would emphasize issues

---

[6] The court further went on to hold in Hackley that "the government's evidence of continuing relationships and repeated transactions, although sparse, is sufficient to support an inference of an ongoing relationship between [the defendant] and [some] unnamed Maryland suppliers." Id. at 680.

in this case favorable to the government. Moreover, the issues included within defendant's proposed instruction already are "substantially covered by the court's charge to the jury" in its remaining instructions, as a whole. United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995). In particular, the importance of having more than only a buyer-seller relationship is covered by the court's instructions regarding "existence of an agreement" and "membership in agreement," including: "Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator."

In sum, for these reasons, the court declined to give defendant's requested buyer-seller relationship instruction.

DATED, this the 30th day of January, 2026.

LOUISE W. FLANAGAN
United States District Judge